FILED ___ LODGE___
___ RECEIVED

MAR 15 2017

WESTERN DISTRICT OF WASHINGTON AT TACOMA
DEP___

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

Sidney D. Jenkins III

(Name of Plaintiff)

vs.

Stephen Sinclair

Michael Holthe

(Names of Defendant(s))

CV-17-5192 BHS/ KLS

CIVIL RIGHTS COMPLAINT
BY A PRISONER UNDER 42
U.S.C. § 1983 First and Fourteenth
Amendment Constitutional Rights
Violations, and Violations of the
Religious Land Use And
Institutionalized Persons Act
(R.L.U.I.P.A.) 42 U.S.C. § 2000cc-
-5(7)(A), 42 U.S.C. § 2000bb-2
(4).

**I. Previous Lawsuits:**

A. Have you brought any other lawsuits in any federal court in the United States while a prisoner?:

☒ Yes     ☐ No

B. If your answer to A is yes, how many?: _____6_____. Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

1. Parties to this previous lawsuit:

Plaintiff:_____Sidney D. Jenkins III_____

Defendants:_____Luther Maynard_____

2

Con't from pg, 2,  I. Parties To Previous Lawsuits.

**#2.**

1. Parties To Previous Lawsuits: <u>Plaintiff</u>: Sidney D. Jenkins III
<u>Defendants</u>: Niamoya ; Kabashawa ; Bradshaw et al,
2. <u>Court</u>: Western District at Seattle, WA.
3. <u>Docket</u>:   C00-1788 RSL
4. <u>Name of Judge</u>:  Robert J. Lasnik
5. <u>Disposition</u>: U.S. District Court granted Summary
Judgement for Defendants ; Court of Appeals for Ninth
Circuit Affirmed
6. <u>Approximate Filing Date</u>: 4-2000
7. <u>Approximate Date of Disposition</u>: 7-2002

**#3.**

1. Parties To Previous Lawsuits: <u>Plaintiff</u>: Sidney D. Jenkins III
<u>Defendants</u>: Eldon Vail et al,
2. <u>Court</u>: Eastern District at Spokane, WA.
3. <u>Docket</u>: CV-08-5075-CI
4. <u>Name of Judge</u>: Lonny Suko
5. <u>Disposition</u>: U.S. District Court granted Summary
Judgement Defendants
6. <u>Approximate Filing Date</u>: 12-08

**#4.**

1. Parties To Previous Lawsuits: <u>Plaintiff</u>: Sidney D. Jenkins III
<u>Defendants</u>: Ron Jensen et al,

Con't from pg. 2, I. Parties To Previous Lawsuits

2. <u>Court</u>: Eastern District at Spokane, WA.
3. <u>Docket</u>:   CV-10-5057
4. <u>Name of Judge</u>:  Can't remember
5. <u>Disposition</u>:   Dismissed
6. <u>Approximate Filing Date</u>:  8-2010
7. <u>Approximate Disposition Date</u>:  10-2010

#5.
1. <u>Parties To Previous Lawsuits</u>: Plaintiff: Sidney D. Jenkins
III, Defendants: Michael Myers
2. <u>Court</u>: Eastern District at Spokane, WA.
3. <u>Docket</u>: CV-12-5053 EFS
4. <u>Name of Judge</u>:  Edward F. Shea
5. <u>Disposition</u>:  District Court granted Summary
Judgement Defendants, Court of Appeals For Ninth
Circuit Affirmed
6. <u>Approximate Filing Date</u>:  6-2012
7. <u>Approximate Disposition Date</u>:  8-2014

#6.
1. <u>Parties To Previous Lawsuits</u>: Plaintiff: Sidney D. Jen-
-kins III, Defendants: Jesse Campos, et al.
2. <u>Court</u>: Eastern District at Spokane, WA.
3. <u>Docket</u>: 4:14-CV-05111-JTR
4. <u>Name of Judge</u>:  Lonny Juko

2B

Con't from pg. 2, I., Parties To Previous Law-
- suits.

5. Disposition: District Court granted Summary
Judgement Defendants, Appeal in Ninth Circuit
Court of Appeals pending.
6. Approximate Filing Date:   2 - 2015
7. Approximate Disposition Date: Yet to be determined.

2C

2. Court (give name of District): Western District at Tacoma, WA.

3. Docket Number: Can't remember

4. Name of judge to whom case was assigned: Hon. Franklin D. Burgess

5. Disposition (For example: Was the case dismissed as frivolous or for failure to state a claim? Was it appealed? Is it still pending?): State Settled

6. Approximate date of filing lawsuit: 4-99

7. Approximate date of disposition: 12-01

## II. Place of Present Confinement: Clallam Bay Correctional Center (CBCC)

A. Is there a prisoner grievance procedure available at this institution?  ☒ Yes   ☐ No

B. Have you filed any grievances concerning the *facts* relating to this complaint?
☒ Yes   ☐ No

If your answer is NO, explain why not:

_____

_____

C. Is the grievance process completed?   ☒ Yes   ☐ No

**If your answer is YES, ATTACH A COPY OF THE FINAL GRIEVANCE RESOLUTION for any grievance concerning facts relating to this case.**

## III. Parties to this Complaint

A. Name of Plaintiff: Sidney D. Jenkins III   Inmate No.: 900051

Address: C-Unit, Cell D-11, Clallam Bay Correctional Center (CBCC) 1830 Eagle Crest Way, Clallam Bay, WA. 98326-9775

(In Item B below, place the full name of the defendant, his/her official position, and his/her place of employment. Use item C for the names, positions and places of employment of any additional defendants. Attach additional sheets if necessary.)

B. Defendant: Stephen Sinclair   Official Position: Asst. Sec. Prism Div.

Place of employment: Wash. DOC  P.O. Box 41118, Olympia, WA. 98504-1118

3

C. Additional defendants Michael Holthe, grievance coordinator at Clallam Bay Correctional Center (CBCC) Clallam Bay, WA, 98326-9775

## IV. Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates, places, and other persons involved. Do not give any legal arguments or cite any cases or statutes. If you allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets if necessary.)

cont I - For this Cause of Action defendant Stephen Sinclair in his individual and official capacity cognizable under 42 USC. § 1983 and 42 USC § 2000 cc - 5(7VA) and 42 USC § 2000 bb - 2 (4) for the substantial burdens placed upon the religious exercise of Sidney D. Jenkins III when eliminating the muslim vendor Halako Books from Washington Department of Corrections approved religious vendor list. He subjected Jenkins to needing to patronize non muslim religious vendors thereby requiring he defile himself by engaging in conduct strictly forbidden by his sincerely held religious beliefs. Violations of Jenkins U.S. Constitution First Amendment right to the exercise of religion free of substantial burdens and his Religious Land Use of Institutionalized Persons Act by the least restrictive means. Rights violated under the color of state law causing him irreparable harm.

1. - Jenkins was deprived of his legitimately obtained religious prayer oil by persons unknown but unequivocably as a direct result of Sinclairs act to complete the states systematic elimination of Muslim vendors. Actions taken with the intent to deny him of rights, similarly enjoyed by other religious groups whom staff remained his oil from the unit property room where no inmate had access on March 2015. Depriving him of the sacredness demanded in his worships to be free of worship nullifying non muslim pollution.

2. - The non muslim vendors vendition directly eviscerate of the taharat (purity) Islamic religion requires of it's adherents: See Holy Qur'an; (Al-Baqarah) The Cow, # II, ayat (verse) # 275 forbidding trade with businesses that pay interest.; Holy Qur'an; (the Imram) family of Imram III (ayat) verse # 130:" O ye who believe! Devour not usury (interest)" Holy Qur'an; (Al-Bara'at) Immunity, IX, (ayat) verse 28: O ye who believe!

4

Con't pg 4, IV Statement of Claim

Verily Verily, the non muslims are unclean. . .; Holy Qu'ran: (Al-Waqiah) The Event, LVI (ayat) verse #77-79: "Verily it is a Qu'ran Honorable, In a Book Hidden, None shall touch it except the purified ones."; Holy Quran: (Al-Baqarah) The Cow, II, (ayat) verse #222: "Verily, God loveth those who turn unto Him constantly and loveth those who clean themselves."; Holy Qu'ran: (An-Nur) The Light, XXIV, (ayat) verse #21: O' ye who believe! follow ye not the steps of Satan; for who--ever followeth the steps of Satan, he (the Satan) en--joineth unto filth and evil; and had it not been God's grace on you and His mercy not one of you would ever have been clean". Holy Quran: (Al Ahzab) The Confederates, XXXIII, (ayat) verse #35: "Verily the muslim men and the muslim women, and believing men and believing women, and obedient men and obedient women, and the truthful men and truthful women, and the patient men and patient women, and the humble men and humble women, and the alms-giving men and the alms-giving women, and the fasting men and the fasting women, and the men who guard their private parts and the women who guard (their private parts), and the men who remem--ber God much and the women who remember God (much), for them hath God prepared forgiveness and a great re--ward."; Holy Qu'ran (Al-A'la) The Most High, LXXXVII, (ayat), verse #14: "Indeed he (alone) succeedeth who

4A

purifieth himself. ; Holy Qu'ran (An-Nur) The Light, XXIV, (ayat), verse #:26, "Dirty women are for the dirty men and the dirty men are for the dirty women, and the clean men are for the clean women and the good ones are for good things; These are free from what they say; For them shall be forgive--ness and a sustenance honorable."; Holy Qu'ran (Al-Maidah) The Table Spread, V, (ayat), verse # 35, ; "O' ye who believe! Fear God and seek ye the means of approach unto Him, and strive hard in His way that ye may be successful."; Holy Qu'ran (Al-Ankabut), The Spider, XXIX, (ayat), verse # 69: "And those who strive hard in Our cause, We will certainly guide them in Our ways; And verily God is (always) with those who do good"; Holy Qu'ran (TA HA) T.H. XX, (ayat), verse # 76: "The Gardens of Eternity beneath which flow rivers, to abide therein; and this is the reward of him who purifieth himself (from evil)."; Holy Qu'ran (Al-Fatir) The Originator, XXXV, (ayat), verse # 18: "Thou canst but warn those who fear their Lord unseen and keep up regular prayer; And who--soever purifieth (himself), he only purifieth for his own self; And unto God (alone) is the destination (of all).; Holy Qu'ran (Shams) The Sun, XCI (ayat), verse # 7-10: "By the soul as it is perfected!, And inspired unto it (against it's vices and (about) it's

4B

piety! Indeed succeedeth he who purifieth it! And indeed faileth he who polluted it!"; Holy Qu'ran, (Al-Lail) The Night, XCII, (ayat) verse # 5-10: "Then as for him who gives zakat (Islamically legislated charity according to shariah — Islamic juris-prudence) and guardeth (himself against evil), And accepted Islam We will smoothen for him the path to bliss. And as for him acted niggardly and deemeth himself self sufficient, And rejects Islam, We will smoothen for him the path to punishment."

3    According to the fatawa (religious ruling) of Ayatullah al-Udhma as-Sayyid Ali al-Husaini as-Seestani (May God be pleased with his lifelong devo-tion to protecting Islam from post Muhammadan influence) See Holy Qu'ran (An-Nisa) The Women, IV, (ayat), verse # 59: "O' ye who believe! obey God and obey the Prophet and those in authority from among you"; Holy Qu'ran (Yasin) Y.S. XXXVI, (ayat) verse #12: "And everything have We confined in a manifesting imam (guide).; Holy Qu'ran (Ar-Rad) The Thunder, XIII, (ayat) verse #7: and an Imam unto every nation; Holy Qu'ran (Bani Israel) Children of Israel, XVII, (ayat), verse #71: "Remember the Day (of Judge-ment) when We will summon every people with their Imam".

4C

Divine recognition of Qu'ranic ordinances (marefat) comes from obedience to the religious jurist (Mujtahid). Ayatullah as-Seestani of Iraq is who Jenkins receives his Islamic jurisprudence. In his (Taudhihul Masae'l) Islamic Laws, pg. 15 under (Najis) Things, e.g. pollution, defilement, are listed: urine; feces; semen; corpse; blood; dog; pig; non-muslim; alcoholic beverages and the touch of anyone or thing that comes in contact with what is traditionally legislated in Islamic Jurisprudence as (najasat) pollution, defilement.

4.   On pg. 25 of Taudihihul Masa'el (Islamic Laws) there are 12 things that make najis objects (Pak) acceptable, number 7 is (Islam.) Submission to God eg: "I bear witness there is no deity but God and Muhammad is His Prophet." Washington Department of Corrections Assistant Secretary of Prison Division Stephen Sinclair May 1st, 2015 directive to deprive prisoner muslims of a religious vendor forces them to either have polluted religious items from which to perform their rituals and religious exercises thereby violating Qu'ranic commandments for purification, or have purity of practice but be basically without a source of religious items guaranteed by the Free Exercise Clause of U.S. Constitution.

5.   This substantial burden upon muslim religious

exercise is exacerbated by violations of Washington States muslim prisoners right to Equal Protection under Fourteenth Amendment of U.S. Constitution when the non muslim vendor provides oil choices. The descriminatory act to grant non muslim inmates 27 oils from which to choose, while muslims are given only 1 oil suitable for use in their worships was performed with the deliberate intent based upon racist animus.

6.     Sinclair's directive to eliminate the lone muslim vendor was a direct response to that vendors expansion of oil choices that augmented it's musk Selection providing muslims with the opportunity for a richer religious experience commisserate with heighth of effervesence as Qu'ranic text is propituous. Halalco Books expanded musk selection came out, and a month later they were taken off the approved vendor list.

7.     The prevelent descriminatory animus against muslims in Washington State is evinced by the unexplanable disappearance of Jenkins oil order from the new expanded selection the muslim vendor offered. My oil arrived at the prison property room and was subsequently delivered by property to my living unit. Where it vanished without a trace from the unit property room synonchronous with Sinclairs March 20th,

4E

2015 vendor extrapolations.

8.       DOC Assistant Secretary of Prisons Division Stephen Sinclairs act to ban the muslim vendor Halalco Books with the March 20th 2015 Religious items Ordering Process Changes: "This change is being made in effort to enhance consistency across the state with religious property", culminates a 15 year long campaign against Muslim vendors. A con--tinuing wrong inflicting continual progressive harm conducted with complete and total disregard of muslims right to be free of discrimination.

9.       A pattern of conduct designed to prevent muslims from satisfying their religious obligation for (taharat) purity against defiling themselves guaran--teed under the Free Exercise Clause. Non muslim vendition irreducibly pollutes the religious items they sell by the (usury) interest paid to creditors. Islamic Law strictly prohibits transactions involving interest. This includes any wares they manufacture and sell with money borrowed or paid back to a loan agency charging interest.

10.      Forcing muslims into buying their religious items from non muslims places a substantial burden upon Jenkins right to the free exercise of religions and co-

4 F

-erces him to forgo his sincerly held belief that (taharat) purity in his worships is made incumbent upon him by Gods command repeated many times in the Holy Qu'ran and elucidated unequivocably by his (Imam) guide as-Seestani in (Taudhihul Masae'l) Islamic Laws. And using religious items from a non-muslim vendor is defilement, and requiring him to be com--placent in this defilement is forbidden by his religion.

11.      On November 4th 2016 Jenkins sponsor Ms. Gera Roelofs attempted to order him 3 ounces, of prayer oil from the muslim vendor Halalco Books, She was told by Halalco, Washington State muslim prisoners are forbidden by Assistant Secretary of Prison Division Stephen Sinclair to purchase religious items from Halalco.

12.     On November 14th 2016, Jenkins wrote a letter to Sinclair. He reminded him of an in person discussion they had in the Close Custody West Complex Delta or D-Unit where, why Jenkins used prayer oil was disclosed. Jenkins reminded the Assistant Secretary of Halalco wasn't suitable for purchasing prayer oil in 2011 due to safety reasons, and how Halalco subsequently suc--cessfully cured those safety concerns for oil sales to re--sume in February 2012.

4G

13.    In the letter Jenkins complained of the un-
equal oil choices, 27 for non muslims and only one for mus-
-lims. How every muslim vendor; Ali's Uncut Oils; Zanjabils;
Garden of Fragrance, Operabea, just to name a few of the
dozen or so muslim vendors, no longer on the approved ven-
-dor list for religious items. Why products from non muslim
vendors cannot meet muslim (taharat) purity require-
-ments. Mr. Sinclair was also given by Jenkins the
Islamic jurisprudence prohibiting muslims from using the
same oils Wiccan and Asatru adherents use.

14.    The curious policy expansion Washington DOC
underwent, in 560.200, from 3 ounces per fiscal quarter
to 3 ounces of oil per month permitted in 2012 when
Washington State Correctional Industries began selling
oil, is evocative of the unconstitutionality of the vendor
advantages given to the non muslims over the muslims.

15.    Warnings of State and U.S. Constitutional
prohibitions, against monopoly were given. Washington
RCW unfair competition elimination accusations were
made. Mr. Sinclair was also appraised his act to remove
the muslim vendor carried Consumer Protection Act and
Administrative Procedure Act implications. He was also
made aware of the conflicts of interest from DOC per-
-sonnel personally involved in Correction Industry (C.I.)

4 #

take over of the food commissary property and re-
-ligious property concessions in Washingtons prisons. Jenkins
disclosed to Mr. Sinclair his findings from the investi-
-gation he conducted concerning his Halalco oil order
that mysteriously disappeared from the unit property
room where only staff had access. C/O Brown and proper-
-ty officer Bradley both expressed their beliefs muslims
did'nt need a vendor specific to them anymore than other
religions should have a vendor of the same faith as them.

16.        Unit counselor Steven Sunberg admitted he
Knew about the Sinclair directive weeks before the memor-
-andum was posted March 20th 2015. Sunberg admitted
he was not alone in knowing about the vendor change.
He however declined to comment when asked how the
oil came up missing; but agreed it was very plausible
unit staff became emboldened by the announcement, and
over zealously acted to expedite it's implementation pre-
-cipitously.

17.        Jenkins Holy Qu'ran and prayer rug met
the same ill fate as his prayer oil. Transfer from
Washington State Penitentiary (W.S.P.) July 20th 2016 to
Clallam Bay Correctional Center (C.B.C.C.) revealed the
Holy Qu'ran translated by S.V. Mir Ahmed Ali with
commentary by Ayatullah Agha H.M.M. Pooya, (donated

4 I

by Bilal Muslim in 2003 at Monroe Correction Complex (MCC) a fifty ($50.ºº value retail) dollar book. The prayer rug came from Halalco, it only cost fifteen ($15.ºº) dollars, but it's loss can't be calculated monetarily. Risk Management rejected the tort claim because my property matrix also turned up missing. J. Roberts, tort and sun-dry claims representative for Risk Management in Jenkins claim: "There is no Qu'ran or prayer rug listed on your last property matrix from WSP."

18.        On December 12th, 2016 Washington State Department of Corrections issued an announcement not signed by any state official that current vendor Access SecurePak was no longer an approved vendor from where Washington prisoners can order their religious items. The new source for religious items: Union Supply Direct, previously from who Washington prisoners were per-mitted to order quarterly food packages, the anonymous announcement promised would be ready to take orders be-ginning January 20th, 2017.

19.        Religious item order forms only became available in Jenkins living unit on March 1st 2017. However, only 1 page of the 2 page form is cur-rently being handed out when unit C/O's are re-quested for a religious item order form. This one page

4J

consist of oil choices exactly duplicative of
the selection disparity Jenkins complained about in
his November letter to Sinclair, different only instead
of just Egyptian musk, Somalia Rose has been added.
An improvement from 2 muslim oils to 27 Wiccan
Asatru oils, remains violative of Constitutionally guaran-
-teed Equal Protection vouch safed by the Fourteenth
Amendment.

20.    This change in vendors does not cure the
substantial burden Sinclair has placed upon the Free
Exercise of Jenkins  religion. His act to eliminate
Halalco, is the last nail of the coffin in which Washing-
ton DOC has systematically buried its muslim prisoners
right; to practice their religion with items free of the
(najasat) impure effluvia inundatingly prevalent
in a pork eating, alcohol imbibing, dog kissing, interest
charging society.

21.    By this reference Jenkins the prisoner pro-se
Plaintiff incorporates each and every averment
set forth in other paragraphs of this complaint
as though fully set forth herein.

4K

# Count - II

22.  On 1-13-17 at Islamic Services, the in-mate giving that days (kuhtbah) sermon made disparaging untrue remarks concerning the Shiite Ithna Asheri Sect of Islam. Upon returning to the Unit after the service, Inmate Michael Hoston asked me for input concerning the veracity of the speakers comments about Shiites. Hoston and Jenkins arrived on the chain at CBCC together and were cell mates in C-Unit, D-5 for that week.

23.  Jenkins requested C/O (name unknown) to be able to give Hoston, who was in the adjacent pod, some religious writings of his. C/O (name unknown) in-quired to the booth officer C/O Kunis for permission to give these writings (about 10 sheets hand written) to Hoston, after officers were able to inspect them and were satisfied the papers posed no safety concerns.

24.  C/O Kunis invoked the prison rule against passing between inmates, and denied permission for Hoston to recieve the papers. Jenkins advised Kunis of a prison inmates right to proselytize and re-cieve religious content from other inmates. Kunis insis-ted it was passing and maintained his denial.

4L

25.    Jenkins grieved the incident suggesting:"Let in-mates share religious writings under supervision of staff = proselytizing. Clallam Bay Correctional Center(CBCC) grievance coordinator Michael Holthe placed me on grievance call out, despite the complaint met Grievance Manual requirements for acceptance.

26.    On 1-23-17 in his office, he suggested my complaint did not merit an official response because Shiites were in the minority and I was over re-acting to being refused to proselytize. Several times during our very adversarial discussion he denigrated chances the grievance would survive a level I appeal.

27.    On 2-3-17 grievance coordinator Holthe responded to my grievance with :"Unit supervisors reported that items should not be passed between offenders even if item has been verified by staff"; and it is fur-ther noted that offenders can acquire materials and/or literature from the Religious Activity Center(RAC) upon request therefore there is no reason for offenders to share and/or pass religious literature in the units". See Log I.D. # 17625425 Part B - Level I Response.

28.    I appealed Holthes findings on 2-9-17 by clarifying:"Proselytizing is a right! Whether it

4M

it takes shape in written form or is spoken, we are permitted to do it! Passing concerns items, religious teachings whether written in books or on plain paper are not items. I am (Mukallad) extrapolating scholarly teachings to common folk. There are no RAC religious materials for what get's said at the podium during a friday Islamic service, nor for why ISIS, Al-Qaeda, Taliban or Boko Haram are not Sunni's but are Salafi. Prisons are breeding grounds for radicalization, the DOC's inexplicable love affair that has facilitated Salafi dominated Islamic pro--gramming in it's prisons is directly responsible for the hard core literal interpretations of the Holy Qu'ran. Jihadist's must be religiously de legiti--mized and people must know; that even if the star and crescent does someday fly over the White House and the Shari'a (Islamic Law) becomes the law of the land, it will be by the democratic process!, not fascism"!

29. 1.   Mr. Holthe responded on 2-10-17 : "Your appeal can only address the same issue as identi--fied in initial complaint. Initial only pertained to the passing of religious writing, no specific informa--tion other than Islamic was mentioned. The same applies to people flying over the White House, 2. Please

4N

write a simple, straight forward statement of concern."

30.   On 2-14-17 Jenkins responded to Holthe's attempt to manicure his response to: "Religious litera-ture can be acquired from RAC upon request", on the same form : "I want Grievance Program Mana-ger review, I'm tired of you trying to sanitize these issues of their full import". On 2-16-17 Holthe informally resolved the grievance thereby ending it.

31.   On 2-14-17 Jenkins grieved Holthe for a succession of grievance coordinator intransigences that include grievance call outs to his office for self explanatory grievances where he attempted to convince him his grievances weren't viable. Grievances consistently in need of re-write and combining grievances, where one issue becomes subsumed by his incessant attempts to informally resolve them. A practice Holthe admitted in an unguarded moment he conducted for curtailing an inmates standing in the law suits they file too much.

32.   On 2-16-17 Holthe responded by stating he has controlling discretion where re-writes are concerned, and Jenkins request for GPM re-

40

- view and attempt to grieve his incessant attempt to deny Jenkins right to seek redress of grievances cannot be appealed to anyone, despite a prisoners U.S. Constitution First Amendment guarantee to seek redress of grievances concerning condi-tions of confinement, without active inter-fer-ence from the one whose job it is to facilitate a prisoners access to remedy for prison complaints.

The conducts of defendant's as described herein was knowingly undertaken with the intent to deny Jenkins the Plaintiff of his right to the full and equal benefit of laws and proceedings for the security of persons and property as is enjoyed by others of other races and religions similarly situated because Jenkins is muslim and is a lay preacher of his faith.

The above complaint is true and correct to the best of my knowledge under penalty of perjury according to 28 U.S.C. § 1746.

4P

**V. Relief**

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

Steven Sinclair stands at the apex of Wa. Doc's pogrom to eliminate muslim vendors from among who it's prisoners must obtain their religious items. With callous disregard for the harms and substantial burdens this ethnic cleansing has caused. He has committed religious genocide just for financial benefit. Punitive damages for 1 million dollars, ($1,000,000) for punitive damages; 1 million dollars, ($1,000,000) for compensatory damages; prospective, declatory, and injunctive relief. Attorney fee's pursuant to 42 USC § 1988(b), and 42 USC § 1997e(d)(1-2). For Holthe, ten thousand dollars ($10,000.00) punitive damages and attorney fee's, declatory and prospective relief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this _10th_ day of _March_ 20_17_.

_____
(Signature of Plaintiff)

5