UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SIDNEY DONALD JENKINS, III,<br><br>                Plaintiff,<br>    v.<br><br>STEPHEN SINCLAIR, et al,<br><br>                Defendants. | Case No. C17-5192-BHS-TLF<br><br>**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Noted for September 19, 2018 |

Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, brought this 42 U.S.C. § 1983 action alleging violations of his First and Fourteenth Amendment rights and the Religious Land Use for Institutionalized Persons Act (RLUIPA). Dkt. 22, Amended Complaint. Defendants, the Chaplain and Grievance Coordinator of the prison in which plaintiff is confined and the Secretary of Washington's Department of Corrections, move for summary judgment. Dkt. 30. Plaintiff has not responded to the motion. The Court recommends that the motion be granted.

**FACTS**

Plaintiff Sidney Jenkins III is an inmate at the Clallam Bay Corrections Center (CBCC), a Washington State Department of Corrections (DOC) prison. Dkt. 22 at 5. Mr. Jenkins alleges that defendants' policies for outside purchases of religious supplies and for the distribution of prayer oils donated to religious groups denied him access to his preferred prayer oils and vendor

REPORT AND RECOMMENDATION-1

and were motivated by an animus against Islam, in violation of RLUIPA, plaintiff's First Amendment right to the free exercise of his religion, and his Fourteenth Amendment right to equal protection. *Id*. at 6, 11-15. Plaintiff also asserts that defendants improperly processed his grievances and retaliated against him for bringing them, violating his First Amendment right to free expression. *Id*. at 21-28. The Amended Complaint is lengthy, and might be interpreted broadly (as the Court previously has previously done, Dkt. 27 at 1-2) to include additional claims for: preventing plaintiff from sharing religious materials, *id.* at 19-20; the loss of plaintiff's Qu'ran and prayer rug during his transfer to CBCC, *id*. at 20-21; a prison sergeant's religious tattoos and alleged favoritism toward skinheads, *id*. at 25-29; and a prison officer's alleged receipt of "kickbacks" in connection with the distribution of religious prayer oil, *id.* at 16. However, plaintiff specifically waives these potential claims and states that these assertions are not intended to be additional claims or causes of action—he rejects the Court's previous liberal construction of his *pro se* complaint. Dkt. 28, Objection to Report and Recommendation Denying Motion for Temporary Restraining Order, at 2-5.

**A.  Plaintiff's Access to Religious Supplies**

Plaintiff asserts that prison policy prevents him access to his preferred vendor of religious items. First, he claims that a DOC policy to confine outside purchases to a single vendor, currently Union Supply Group, terminated his preferred vendor, Halalco Books, and deprived him of the ability to purchase from a Muslim vendor. Dkt. 22 at 11-14. Plaintiff asserts that being forced to obtain his prayer oil from a non-Muslim vendor substantially burdens his ability to exercise his religion, *id,* that prayer oil price, quality, and scent are inferior under the new vendor, *id.* at 15-19, and that defendants violated his right to equal protection because the new vendor provides only a limited selection of Muslim oils, while the vendor offers a wider

REPORT AND RECOMMENDATION-2

selection of oils for other religions, *id*. at 12. Second, plaintiff asserts that he is denied access to donated prayer oil, which he states is sourced from his favored vendor, unless he attends services of Muslim sects with which he, as a Shiite, disagrees and from whom he has felt hostility. Dkt. 22 at 15.

Defendants submitted the Declaration of defendant Chaplain Douglas Duncan, which explains that inmates may obtain religious supplies, such as prayer oils, by four different methods: (1) by making purchases from the DOC's approved vendor, (2) by making an item through an approved craft process, (3) by sharing in a community donation to a prison religious group, or (4) by receiving individual donation items from religious organization. Dkt. 31 (Duncan Dec.), ¶ 7; Dkt. 31-1 (Ex. 3 to Duncan Dec.) at 19. In 2017, DOC changed its policy for purchases from approved outside vendors to consolidate to a single vendor for all purposes, including religious items (for all religions) as well as food. Dkt. 31, ¶15; Dkt. 31-1 (Ex. 7 to Duncan Dec.), at 155. This decision was made to improve security and to simplify the process by eliminating a multiplicity of outside vendors who were difficult to vet and left the prisons at higher risk for the introduction of contraband. Dkt. 31, ¶15. Under the new vendor, DOC was able to achieve price reductions in many offerings and to eliminate delivery charges. Dkt. 31-1 at 155.

Ordering from the approved vendor is not the only method by which inmates may obtain religious materials. Religious groups may also receive supplies from outside donors. Dkt. 31, ¶¶ 8-9. The two recognized CBCC Islamic groups receive prayer oils from community donations or use community-donated or inmate-donated money to purchase oil. *Id*. Eligibility to receive donated or purchased oil from a CBCC religious group depends upon an inmate's participation in group activities. *Id.*, ¶ 10. Inmates that participate in the group's programming for the majority of

REPORT AND RECOMMENDATION-3

the previous six months are eligible. *Id.* While plaintiff attended a few Islamic group programs, he ceased attending because, as a Shiite, he found them "hostile." Dkt. 31, ¶ 13; Dkt. 22 at 6. As a result, he is not eligible for distribution of group-obtained prayer oil. However, inmates may also receive individual donations from outside religious organizations. Dkt. 31, ¶7. Plaintiff has received "several donated items," including prayer oil, from a local Shia organization. *Id.*, ¶14.

**B.      Processing of Plaintiff's Grievances**

Plaintiff claims that defendants chilled his First Amendment rights by requesting grievance re-writes and issuing "callouts" summoning plaintiff to the grievance office to discuss his grievances. Dkt. 22 at 23-24. Plaintiff argues that such conduct is unjustified, intimidating, and heightens the grievance standard. *Id.* He also asserts that this conduct constitutes retaliation for his filing of grievances. *Id.* at 24.

**1.   Grievance Process**

Defendants submitted the Declaration of defendant Michael Holthe, the CBCC Grievance Coordinator, which describes the grievance process. Dkt. 32 (Holthe Dec.) and Dkt 32-1, Ex. A (DOC Offender Grievance Program) and B (DOC Offender Grievance Program Manual). The grievance process is described as non-punitive, and the program seeks, if possible, an informal resolution before embarking on its formal steps. Dkt. 32, ¶¶ 7, 8.

An interview of the person who has submitted a grievance is a mandatory part of the process, Dkt. 32-1 at 3. The interview occurs only if the grievance has been formally accepted. Dkt. 32, ¶ 11. The Grievance Program Manual provides that "[if] the offender refuses to be interviewed . . . or to actively participate in such an interview, which includes showing up for the grievance call-out, the grievance or appeal may be administratively withdrawn." Dkt. 32-1 at 25. The four specific steps of the grievance program are as follows:

REPORT AND RECOMMENDATION-4

Level 0: After a complaint is received, the Grievance Coordinator attempts informal resolution, seeks additional information, or returns the complaint to the prisoner for re-writing. Dkt. 32, ¶ 5. A complaint returned for re-writing must be re-submitted within five days (or a date set by the grievance coordinator) or it is deemed administratively withdrawn. *Id*. There is no appeal from a re-write requirement. *Id*., ¶ 13. If the Grievance Coordinator deems a grievance to be non-grievable, it is returned to the grievant; prisoners may request a review of this determination by the Grievance Program Manager. *Id*., ¶5.

Level I:  Accepted grievances are processed and responded to by the local Grievance Coordinator, including interviewing the grievant. *Id*, ¶ ¶ 5, 11. Grievances considered at this level are those against policies, procedures or other offenders. *Id*., ¶ 5.

Level II:  Inmates may appeal decisions of Level I grievances to Level II, where they are investigated and decided by the prison superintendent. Grievances against staff begin at this level. Dkt. 32, ¶5.

Level III:  Level II responses may be appealed to Level III, where they are re-investigated by DOC headquarters staff. *Id*., ¶5.

**2. Plaintiff's Grievances**

Plaintiff identifies five grievances that he claims were improperly processed.

First, plaintiff filed a complaint challenging a prohibition against passing religious materials to another inmate. Dkt. 22 at 22. Plaintiff was placed on call-out to be interviewed regarding this grievance, which would not have occurred if the grievance had not been accepted into the formal process. Dkt. 32, ¶ 11. The grievance was denied and plaintiff appealed, but the appeal contained additional complaints and extraneous material, so defendant Holthe required

REPORT AND RECOMMENDATION-5

that it be re-written. *Id.* at ¶ 13.[1] Plaintiff objected and did not re-write; his grievance was therefore administratively closed. *Id*.

Second, plaintiff filed a complaint attempting to grieve the re-write requirement applied to his original grievance. Dkt. 22 at 23; Dkt. 32, ¶ 14. Defendant Holthe determined this to be non-grievable, and plaintiff did not appeal that determination. Dkt. 32, ¶14.

Third, Plaintiff filed a complaint alleging that the mailroom withheld an item from his mail. Dkt. 22 at 24. At defendant Holthe's request, plaintiff provided additional information, and Holthe scheduled an interview call-out. Dkt. 32, ¶ 15. Plaintiff did not attend the interview, which resulted in an administrative withdrawal of the grievance. *Id*.

Fourth, plaintiff filed a complaint seeking access to donated prayer oils. Dkt. 22 at 25. He did not attend the call-out for his interview, and the grievance was therefore administratively withdrawn. Dkt. 32 at 16.

Finally, plaintiff brought a complaint challenging the visible cross tattoos on the neck of one of the CBCC sergeants; plaintiff objected to the tattoos for both their religious nature and due to his perception that they were skinhead icons consistent with what he viewed as that sergeant's favoritism toward skinheads. Dkt. 22 at 25-27. Plaintiff complains that defendant Holthe asked whether he had addressed his concerns to the officer. *Id*. at 38. Neither plaintiff nor defendants address the ultimate disposition of this grievance.

---

[1] The Grievance Program Manual states that "[a]ppeals must address the same issue as the initial grievance"; new issues "may not be added" and if included in an appeal, "grievances will be returned to be rewritten." Dkt 32-1 at 30.

REPORT AND RECOMMENDATION-6

# DISCUSSION

## A. Summary Judgment and Section 1983 Standard

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure (FRCP) 56(c). In deciding whether summary judgment should be granted, the Court "must view the evidence in the light most favorable to the nonmoving party," and draw all inferences "in the light most favorable" to that party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). When a summary judgment motion is supported as provided in FRCP 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2).

If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. *Id.* The moving party must demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A material fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv.*, 809 F.2d at 630.

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some

1 'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477
2 U.S. at 290). Although plaintiff has not responded to defendants' motion, a verified complaint
3 (such as the Amended Complaint) may be treated as an affidavit in opposition to summary
4 judgment—but only to the extent that it is based upon personal knowledge and sets forth specific
5 facts admissible in evidence. *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir.1996) (internal
6 quotations and citations omitted). Plaintiff cannot defeat summary judgment with "unsupported
7 conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112
8 (9th Cir. 2003).

9       To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct
10 complained of was committed by a person acting under color of state law, and (b) the conduct
11 deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the
12 United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*,
13 *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an
14 alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d
15 1350, 1354 (9th Cir. 1985). A plaintiff in a § 1983 action must allege facts showing how
16 defendants individually caused or personally participated in causing the harm alleged in the
17 complaint. *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

18 **B.**     **Plaintiff's Access to Religious Items**

19       Plaintiff asserts that the termination of his preferred outside vendor for religious items,
20 including prayer oils, and his lack of access to oils donated to prison Islamic groups violate
21 RLUIPA and his rights to free exercise of his religion and to equal protection. For the reasons
22 discussed below, plaintiff has not met his burden to defeat summary judgment dismissing these
23 claims.

24

25

REPORT AND RECOMMENDATION-8

**1. RLUIPA**

RLUIPA provides in relevant part that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

    (1) is in furtherance of a compelling governmental interest; and

    (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.[2]

A plaintiff "bears the initial burden of going forward with evidence to demonstrate a prima facie claim" that the challenged state action constitutes "a substantial burden on the exercise of his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). If the inmate is able to meet this burden, the state then must prove that "any substantial burden" on the "exercise of his religious beliefs is both 'in furtherance of a compelling governmental interest' and the 'least restrictive means of furthering that compelling governmental interest.'" *Id.* (quoting 42 U.S.C. § 2000cc-1(a), citing 42 U.S.C. § 2000cc-2(b)) (emphasis in original).

RLUIPA does not define "substantial burden." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). However, the Ninth Circuit has explained that to be considered a "substantial burden," the challenged state action "must impose a significantly

---

[2] Plaintiff's Amended Complaint also mentions another statute, the "Religious Freedom Reform [sic] Act," which the Court construes as referring to Religious Freedom Restoration Act of 1993 (RFRA), 107 Stat. 1488, 42 U.S.C. § 2000bb *et. seq.* That statute has been held to be unconstitutional as applied to State and local governments. *City of Boerne v. Flores*, 521 U.S. 507 (1997). Instead, RLUIPA governs claims against State and local entities, while RFRA governs claims against Federal entities. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011).

REPORT AND RECOMMENDATION-9

great restriction or onus upon [religious] exercise," such that it "intentionally puts significant pressure on inmates . . . to abandon their religious beliefs." *Warsoldier,* 418 F.3d at 995-96. The government "must place more than an inconvenience on religious exercise." *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks omitted). In considering a prisoner's challenge to institutional policies, the Court considers whether the government's conduct "'denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124-25 (9th Cir. 2013) (quoting *Warsoldier*, 418 F.3d at 995 (alteration in original)). On the other hand, the Supreme Court has not read RLUIPA as elevating the "accommodation of religious observances over an institution's need to maintain order and safety." *Cutter v. Wilkinson,* 544 U.S. 709, 722 (2005). Indeed, "prison security is a compelling state interest," and "deference is due to institutional officials' expertise in this area." *Id.* at 724 n.13.

### a. Vendor Consolidation for Purchased Religious and Other Items

Plaintiff has failed to establish that his religious exercise has been substantially burdened by DOC's vendor consolidation. Plaintiff does not assert that he has been denied access to prayer oil, and in fact admits that he has access to a vendor that supplies it, Dkt. 22 at 18-19.[3] Plaintiff is not being pressured to abandon his religious beliefs. *Cf. Warsoldier*, 418 F.3d at 996 (disciplining plaintiff for exercise of his religious prohibition against cutting his hair imposed a substantial burden). Instead, plaintiff seeks more access, to additional oils. His claim is more

---

[3] Plaintiff alleges that the current vendor does not offer any religious items other than prayer oil, Dkt. 22 at 18, yet plaintiff is not asserting he has been unable to obtain other items necessary for the practice of his religion. Plaintiff complains that his Qu'ran and prayer rug were lost, Dkt. 22 at 13, but he disclaims allegations for this loss, Dkt. 28 at 2-5, and does not allege that he has been unable to replace them.

REPORT AND RECOMMENDATION-10

1  akin to that in *Hartmann*, where Wiccan prisoners seeking a full time chaplain (as opposed to the

2  part-time volunteers that were provided) were not pressured to abandon their beliefs, but instead

3  merely "s[ought] additional religious accommodations." 707 F.3d at 1125. The plaintiffs were

4  not entitled to be provided "with the chaplains of their choice." 707 F.3d at 1122.

5        The Ninth Circuit has expressly approved limitations on prisoner access to religious oil.

6  In *Nance v. Miser*, 700 Fed. Appx. 629, *632-633 (9th Cir. 2017), the court held that an outright

7  ban on scented religious oils violates RLUIPA, but approved of "policies followed at other well-

8  run institutions" described in other cases that limit the quantity, source and access to prayer oil—

9  including requiring an approved vendor. *Id*., *citing, inter alia, Lewis v. Ollison*, 571 F.Supp.2d

10  1162, 1171 (C.D. Cal. 2008). Indeed, the court directed summary judgment that plaintiff be

11  permitted "to order scented oils from an approved vendor to be stored by the chaplain and used

12  under the chaplain's supervision"—thus imposing more restrictions than are at issue here. *Id*.

13        Other courts specifically addressing the single-vendor issue raised by plaintiff here have

14  determined that requiring the use of a single vendor does not meet the substantial burden element

15  of RLUIPA. A prisoner "does not have a constitutional right to a vendor of his choice." *Davis v.*

16  *Powell,* 901 F. Supp. 2d 1196, 1215 (S.D. Cal. 2012) (policy favoring prayer oil orders from

17  Union Supply over plaintiff's preferred vendor Halalco Books does not impose a substantial

18  burden). *See also Thomas v. Little,* No. 07-1117-BRE/egb, 2009 WL 1938973, at *5 (W.D.

19  Tenn. July 6, 2009) (dismissing First Amendment and RLUIPA claims arising out of policy

20  limiting prayer oil purchases to approved vendor Union Supply); *Bey v. Tenn. Dep't of Corr.,* No.

21  2:15-CV-174-TWP-MCLC, 2018 WL1542383, *3 and n.3 (E.D. Tenn. Mar. 29, 2018) (no

22  substantial burden in prison's requirement that prayer oil be purchased from an approved vendor,

23  Union Supply, instead of a Muslim vendor); *Tate v. Dickinson*, No. 2:13-cv-2393-WBS-EFB P,

24

25

REPORT AND RECOMMENDATION-11

1  2014 WL 2877317 (E.D. Cal. June 24, 2014) ("plaintiff's mere preference for a larger variety of
2  oils . . . is not sufficient to state a cognizable claim").
3        Plaintiff's insistence that he be provided access to a vendor of his own faith was
4  expressly rejected in *Thomas*, where the plaintiff objected to a requirement that he obtain oil
5  from Union Supply instead of his preferred vendor, the Dawah Book shop; the court noted that
6  plaintiff "does not allege that this prayer oil is somehow unfit for his religious ritual." 2009 WL
7  1938973 at *5. Similarly, plaintiff here asserts that the oil he may purchase (from the same
8  vendor as in *Davis*) is "inferior" and not as fragrant—but does not state any facts demonstrating
9  that it cannot serve its religious purpose. Dkt. 22 at 18-19. Plaintiff has not established that that
10 the vendor policy places a substantial burden on his religious practice.

      **b. Access to Donated Prayer Oil**

12       Plaintiff's dispute with DOC about the policy for distribution of group donations
13 similarly fails to meet RLUIPA's prima facie threshold. First, as discussed above, plaintiff has
14 the option of purchasing oil, so restrictions on access to donated oil place no burden on his
15 access to the oil he needs to practice his religion.
16       Second, the distribution policy cannot be said to pose a substantial burden. Attending
17 CBCC Islamic group services to acquire free group-donated prayer oil is not a "substantial
18 burden" on the free exercise of religion. Plaintiff ceased attending those services due to "hostility
19 in the sectarian divide." Dkt. 22 at 15. But RLUIPA does not entitle a prisoner to free prayer oil.
20 *Cutter*, 544 U.S. at 720 n.8 ("RLUIPA does not require a State to pay for an inmate's devotional
21 accessories"). In addition, the prison's provision of unified services for Muslims—instead of
22 separate groups for each sect—amounts at most to a "diminishment of spiritual fulfillment,"
23 which is not a 'substantial burden' on the free exercise of religion." *Navajo Nation v. United*

REPORT AND RECOMMENDATION-12

*States Forest Service,* 535 F.3d 1058, 1070 (9th Cir. 2008). *See Janali v. Corr. Corp. of Am.,* No. 5:11-cv-119-KS-MTP, 2013 WL 6536373, *8 (S.D. Miss. Dec. 13, 2013) (citing *Navajo Nation*) ("Plaintiff has failed to establish that attendance in the unified Sunni and Shia worship service truly pressures him to significantly modify his religious behavior and significantly violates his beliefs.").

Finally, the prison provides a third alternative to plaintiff for obtaining religious supplies—the receipt of individual donation items from community religious groups. Dkt. 31, ¶7. Plaintiff has received such items, including prayer oil, from a local Shia organization. *Id.*

Plaintiff has not established a prima facie case that defendants' prayer oil policies constitute "a substantial burden on the exercise of his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005)*.* Accordingly, the court need not reach RLUIPA's additional requirements of a compelling state interest and least restrictive means. *Navajo Nation*, 535 F.3d 1075-76 (under RFRA, "[a]bsent a substantial burden, the government need not establish a compelling interest, much less prove it has adopted the least restrictive means"); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) (where plaintiff has not established a substantial burden, the court need not reach the additional issues under RLUIPA).

**2. First Amendment**

For the same reason, plaintiff has not established a First Amendment violation. The First Amendment guarantees the right to the free exercise of religion. However, the free exercise right "is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).

REPORT AND RECOMMENDATION-13

1    To establish a free exercise claim, an inmate "must show the [defendants] burdened the
2 practice of [his] religion, by preventing him from engaging in conduct mandated by his faith,
3 without any justification reasonably related to legitimate penological interests." *Freeman v.
4 Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled in part on other grounds, Shakur v.
5 Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). The First Amendment does not reach the
6 "incidental effects" of otherwise lawful government programs "which may make it more difficult
7 to practice certain religions but which have no tendency to coerce individuals into acting
8 contrary to their religious beliefs." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485
9 U.S. 439, 450-51 (1988). As under RLUIPA, a free exercise violation occurs only where a
10 burden imposes more than an inconvenience on religious exercise. *See Guru Nanak Sikh Soc'y of
11 Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (relying on the Supreme Court's
12 free exercise jurisprudence in defining a substantial burden under RLUIPA); *Warsoldier*, 418
13 F.3d at 995-96 (same). If such a burden is established, the court must then analyze the
14 reasonableness of the regulation at issue under the four-factor test identified in *Turner v. Safley*,
15 482 U.S. 78, 89-90 (1987).

16    For the reasons discussed in connection with plaintiff's RLUIPA claim, plaintiff has not
17 established that defendants' vendor or donated prayer oil distribution policies imposed a
18 constitutionally cognizable burden upon his ability to practice his religion. At most, he has
19 alleged "inconvenience on religious exercise," and not "substantial pressure . . .to violate his
20 beliefs." *Guru Nanak Sikh Soc.*, 456 F.2d at 988. In light of plaintiff's failure to establish this

REPORT AND RECOMMENDATION-14

threshold element, the court need not apply the *Turner* factors to determine whether the policies are supported by reasonable penological goals. *Patel*, 515 F.3d at 813.[4]

### 3. Equal Protection

Finally, plaintiff fails to establish that defendants' religious materials policies violated his right to Equal Protection.

In the religious exercise context, "[p]risoners enjoy religious freedom and equal protection of the law subject to restrictions and limitations necessitated by legitimate penological interests." *Freeman,* 125 F.3d at 737 (Constitution's Equal Protection guarantee ensures prison officials cannot discriminate against particular religions). Prison officials, therefore, "must afford an inmate 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Id.* (citing *Cruz v. Beto*, 405 U.S. 319, 322 (1972)). However, prison officials need not make identical provisions to different faiths, but rather "must make 'good faith accommodation of the [prisoners'] rights in light of practical considerations." *Id.* Accordingly, plaintiff must show that defendants "intentionally acted in a discriminatory manner," although such intent sometimes may be inferred by the mere fact of different treatment. *Id.* (citing *Sischo-Nownejad v. Merced Comty. College Dist.*, 934 F.2d 1104, 1112 (9th Cir. 1991).

To demonstrate an Equal Protection violation, plaintiff "must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998). To defeat summary judgment on a discrimination claim, the plaintiff must "produc[e] evidence sufficient to permit a

---

[4] While it is not necessary to reach the issue, the Court notes that the defendants have provided evidence of reasonable penological goals supporting both policies, which plaintiff has not rebutted. Dkt. 31, ¶¶ 15, 10.

REPORT AND RECOMMENDATION-15

reasonable trier of fact to find by a preponderance of the evidence that" the challenged action was motivated by animus against the protected trait. *FDIC v. Henderson,* 940 F.2d 465, 473 (9th Cir. 1991).

Plaintiff does not meet his burden to demonstrate discriminatory animus. First, plaintiff provides only speculative and conclusory statements of purported animus premised upon the elimination of a Muslim vendor. Dkt. 22 at 11-14. But the consolidation eliminated all other vendors, of all goods and all faiths, and replaced them with a single vendor. Plaintiff submitted no evidence[5] that such a sweeping, DOC-wide program was motivated by any discriminatory intent; to the contrary, defendants have shown that it was motivated by legitimate penological interests of security, efficiency and prevention of contraband. Dkt. 31, ¶ 15.

Plaintiff also claims an Equal Protection violation based on the disparity of oil selections available, respectively, to Muslims (two scents) and Wiccans (27 scents). Dkt. 22 at 12, 18. This argument lacks evidence of discriminatory intent. Inmates have no constitutional right to a greater selection of oils. *Tate*, 2014 WL 2877317 at * (E.D. Cal. June 24, 2014) ("Plaintiff's mere preference for a larger variety of oils to choose from is not sufficient to state a cognizable claim"). Muslims, like all other inmates, may order from the same vendor; there is no unequal treatment. Dkt. 31, ¶ 15.

There is no evidence of intent to favor one group over another by choosing a single vendor for all purposes (not just religious), for the legitimate penological purposes of enhancing security. Plaintiff has no Constitutional right to his vendor of choice or to a wide selection of

---

[5] Plaintiff's purely speculative conspiracy theories are not evidence. Plaintiff cannot defeat summary judgment with "unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.,* 343 F.3d 1107, 1112 (9th Cir. 2003).

REPORT AND RECOMMENDATION-16

oils, and has not provided evidence supporting an Equal Protection claim.

**C.    Plaintiff's Grievances**

Plaintiff's second set of claims challenges the processing of his grievances. These claims also fail, for the reasons discussed below.

**1.  Grievance Process**

Plaintiff asserts that the processing of his grievances imposed a heightened burden. In particular, he takes exception to being called out for interviews and to being required to re-write some of his grievances. Dkt 22 at 23-24. Plaintiff also appears to object to defendant Holthe's initial inquiries regarding his complaint about an officer's tattoos—which appear to have been attempts by Holthe to explore the possibility of informal resolution. Dkt. 22 at 29.

All of these procedures are standard components of DOC's grievance program. An interview is a mandatory step in the grievance process, which provides for administrative withdrawal of a grievance if a grievant fails to respond to the call-out. Dkt. 32-1 at 3, Dkt 32-1 at 25. Similarly, the Offender Grievance Program Manual expressly authorizes grievance coordinators to request re-writes and makes such requests non-appealable. Dkt. 32-1 at 24. An appeal that add new issues must be re-written, because the program rules prohibit such additions. Dkt. 32-1 at 30. Finally, the grievance program emphasizes a preference for informal resolution of grievances, and exploring whether this is possible is a standard part of the process. Dkt. 32-1 at 14, Dkt. 32, ¶ 7. These provisions are applicable to all grievants. Dkt. 32-1 at 11-12.

Since each of the procedures to which plaintiff takes exception is a standard part of DOC's grievance process, plaintiff's claim appears to challenge the process itself. This challenge

REPORT AND RECOMMENDATION-17

1 fails, because "inmates lack a separate constitutional entitlement to a specific prison grievance
2 procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). *See also Mann v. Adams*, 855
3 F.2d 639, 640 (9th Cir. 1988); *Allen v. Wood*, 970 F. Supp. 824, 832 (E.D. Wash. 1997).

    **2. Retaliation**

Plaintiff also claims that defendants' treatment of his grievances constitutes retaliation for filing them in the first place. Dkt. 22 at 24.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watson v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). To prevail on a First Amendment retaliation claim, a prisoner must prove that: (1) he or she engaged in conduct protected under the First Amendment; (2) the defendant took adverse action; (3) the adverse action was causally related to the protected conduct; (4) the adverse action had a chilling effect on the prisoner's First Amendment activities; and (5) the adverse action did not advance a legitimate correctional interest. *Watson*, 668 F.3d at 1114–15.

Filing prison grievances is clearly protected conduct. However, there is no evidence that defendants took any adverse action against plaintiff, and defendants' actions were based upon legitimate penological goals.

Defendants applied their established rules to plaintiff's grievances. When plaintiff refused to attend mandatory interviews, his grievances were administratively withdrawn, as the Offender Grievance Program Manual provides. Dkt 32, ¶¶ 15, 16. When plaintiff's appeal did not comply with the program requirements, he was requested to re-write it, as the program requires. *Id*. at ¶ 3; Dkt. 32-1 at 30. When plaintiff was informed one of his grievances addressed a non-grievable matter, he declined to appeal that determination. *Id*., ¶13. When a new complaint

was filed, defendant Holthe sought to determine whether informal resolution was possible, as the grievance policy urges. Dkt. 32, 7; Dkt 32-1 at 14.

Defendants enforced established procedures applicable to all offender grievances; plaintiff has submitted no evidence that defendants were motivated by anything other than applying the grievance program's rules. Prison officials have a legitimate penological interest in requiring adherence to an established grievance procedure. *See Sapp v. Kimbrell,* 623 F.3d 813 821 (9th Cir. 2010) ("no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings") (quoting *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)).

Finally, plaintiff's retaliation claims fail for the additional reason that he has failed to exhaust his administrative remedies. Plaintiff does not allege that he filed any grievances asserting that the processing of his other grievances was retaliatory. Exhaustion of the grievance process is a precondition to bringing a § 1983 claim. 42 U.S.C. 1997e(a); *Booth v. Churner,* 532 U.S. 731, 741 (2001). Plaintiff's failure to avail himself of the available grievance process is fatal to his retaliation claim.

**D.     Qualified Immunity**

Defendants argue that qualified immunity applies to all claims for damages in this matter. Qualified immunity is an affirmative defense to damages liability and does not bar actions for declaratory or injunctive relief. *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991). To defeat defendants' assertion of qualified immunity, the plaintiff must establish both: (1) that defendants violated a statutory or constitutional right; and (2) the "'right was clearly established at the time of the alleged misconduct.'" *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044

REPORT AND RECOMMENDATION-19

(2015)). The Court may consider either step first. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Addressing the first step, a Court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, as discussed above, plaintiff does not present facts showing that defendants' conduct violated his constitutional rights. Accordingly, defendants are entitled to qualified immunity with respect to plaintiff's claims for monetary damages.

## CONCLUSION

Based on the foregoing discussion, because plaintiff has failed to establish a violation of his federal constitutional or statutory rights, and for the other stated reasons set forth herein, the Court recommends that defendant's motion for summary judgment be granted, and that plaintiff's complaint be dismissed.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **September 19, 2018** as noted in the caption.

Dated September 4, 2018.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION-20